IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RICHARD LEROY TURNER                                                    PLAINTIFF

v.                      Civil No. 5:16-cv-05071

NURSE PRACTITIONER KELLEY OLIVER,
Karas Care; DEPUTY ROB BABIONE (Badge 493);
CORPORAL TIM CAUDLE (Badge 431);
OFFICER JOE STANDROD (Badge 516);
SERGEANT C. MITCHELL; and
LIEUTENANT FOSTER                                                      DEFENDANTS

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights case filed by the Plaintiff, Richard Leroy Turner, pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Cummins Unit of the Arkansas Department of Correction. At all times relevant to this complaint, Plaintiff was incarcerated in the Washington County Detention Center (WCDC). Plaintiff contends his constitutional rights were violated in the following ways: he was punished without due process when he was moved to segregated housing; Defendants failed to protect him from the possibility of violence at the hands of other inmates; and, he was denied adequate medical care.

The Washington County Defendants (hereinafter the "County Defendants"), Deputy Rob Babione, Corporal Tim Caudle, Officer Joe Standrod, Sergeant C. Mitchell, and Lieutenant Foster, filed a motion for summary judgment (Doc. 50). Nurse Oliver also filed a summary judgment motion (Doc. 53).

-1-

On April 13, 2017, a summary judgment hearing was held to allow Plaintiff to testify in response to the summary judgment motions. Plaintiff appeared by video from the Cummins Unit. The motions are now ready for decision.

## I. BACKGROUND

Plaintiff was arrested and booked into the WCDC on November 11, 2015. *Defendants' Exhibit* (hereinafter "*Defts' Ex.*") 1 at 3.[1] On March 1, 2016, Plaintiff, then a pretrial detainee, maintains the County Defendants had him moved to segregation (23 hour per day on lock-down) based on "hearsay evidence" from other inmates. Specifically, Plaintiff testified that two inmates reported that Plaintiff and Inmate Douglas Black had stolen their commissary. *See also Defts' Ex.* 2 at 1& 3. The inmates told Deputy Babione that Plaintiff and Inmate Black needed to be moved out of the pod before there were problems. *Id.* The County Defendants maintain the Plaintiff was moved to administrative segregation for his own safety. *Id.* at 1 & *Defts' Ex.* 2 at 1. Deputy Babione indicates Plaintiff and Inmate Black "could not remain in the B Pod due to their issues with multiple inmates also in B Pod." *Defts' Ex.* 2 at 1.

According to Plaintiff, he was originally told that disciplinary actions were being filed against both he and Inmate Black; however, he states the disciplinary actions were dismissed without any investigation being done. Plaintiff noted that the cameras in the pod record 24 hours a day 7 days a week, so an investigation could have easily been performed. He believes County Defendants' own policy required them to investigate and hear both sides of the story before

---

[1] The County Defendants' Exhibits will be referred to as *Defts' Ex.* Nurse Oliver's exhibits will be referred to as *Oliver's Ex.*

action was taken. *Defts' Ex.* 3 at 18. In his opinion, their failure to investigate the matter, violated their own policies and procedures as set forth in the inmate handbook. *Id.*

Plaintiff indicates he remained in administrative segregation for seven days in a three man cell with four men assigned to it. *See Defts' Ex.* 3 at 28. Plaintiff testified he was put in a cell with a mentally unstable inmate. *Id.* at 18. Specifically, he states he saw a federal inmate try to commit suicide by swallowing razor blades, severely lacerating his arm, and sticking a razor blade in his eye. *Id.* Plaintiff contends this constituted mental abuse. Plaintiff testified this caused him to suffer from Post Traumatic Stress Disorder (PTSD). *Id.* at 19.

In addition to mental distress, Plaintiff testified he suffered from physical pain from being cramped "in a little bitty cell 23 hours a day." *Defts' Ex.* 3 at 19. He contends there was insufficient room to do his back exercises or even walk around. *Id.* at 21. He testified he was basically forced to lay in a bed. *Id.* Further, he said it caused financial strain because he was attempting to do his taxes, but his hours out were so early he was unable to call at a time where he could talk to someone about the problems. *Id.* at 20.

On March 8, 2016, Plaintiff contends Lieutenant Foster and Sergeant Mitchell moved him to a block where his personal well being had been threatened in the past by three detainees – two of whom were still in the block. Plaintiff testified that he had previously been housed in N-Pod, and when he was moved out the first time he told Deputy Garcia that he had several issues with Inmate Griffin. *Defts' Ex.* 3 at 32. In fact, Plaintiff testified Inmate Griffin had assaulted him and Inmate Black previously. *Id.* At the time, Plaintiff testified they did not notify officers because they were "terroristically threatened." *Id.* Later, however, they did tell officers about the assault. *Id.* at 32-33.

-3-

Plaintiff testified Inmate Griffin and "these inmates" had assaulted several inmates. *Defts' Ex.* 3 at 33. Additionally, he testified Inmate Amerson had assaulted Inmate Black. *Id.* Plaintiff testified when he was moved out of segregation into N-Pod that he told staff there were inmates in there that he had issues with. *Id.* at 33-34. Plaintiff stated he was threatened for several days and even had a shank pulled on him.[2] He indicated the shank was made of carbon steel and twelve inches long. Plaintiff testified he was moved back into segregation.

According to Defendants, there was no record of any physical assault on or around March 8, 2016, and no record of any request for protective custody or a threat/need to remove the Plaintiff around that date. *Defts' Ex.* 1 at 1.

Plaintiff alleges that Nurse Oliver prescribed him amoxicillin despite his being highly allergic to it. Plaintiff testified he was seen with complaints of vomiting, chest pain, lung pain, weakness, and congestion. Plaintiff testified Nurse Oliver saw him over a "visitation video box," and not in person, so his vitals were not taken and he was not examined in any way. Plaintiff told her the problems he was having with coughing up phlegm. *Defts' Ex.* 3 at 54. According to Plaintiff, Nurse Oliver said: "You are allergic to amoxicillin?" To which, he replied: "Yes." *Id.* The following day, Plaintiff states he was prescribed 1,000 milligrams of amoxicillin. *Id.*

Plaintiff did not take the amoxicillin when the med-pass nurse tried to give it to him. *Defts' Ex.* 3 at 54. Plaintiff notified Nurse Oliver of the mistake via the kiosk, and they were supposed to "fix it." *Id.* Despite this, Plaintiff testified he was offered amoxicillin that night at pill call and the following morning. *Id.* at 55. Plaintiff testified the med-call nurse never told

---

[2]Plaintiff did not mention a shank being pulled on him in his deposition. *See Defts' Ex.* 3.

the inmates what medication they were being given. *Id.* at 64. For a period of time, Plaintiff testified he went without medication.

Plaintiff testified Nurse Oliver was familiar with is medical jacket and provided him with adequate medical treatment with the exception of a two week period. With respect to the prescription for amoxicillin, Plaintiff testified Nurse Oliver could have just made a mistake; however, he noted, a simple mistake could have had lethal consequences. He also testified he had asked to be seen by her after she wrote the amoxicillin prescription. *Defts' Ex.* 3 at 68.

Plaintiff also contends there were time delays in his receiving treatment. *Defts' Ex.* 3 at 59. When he was in administrative segregation, Plaintiff states he began having a problem vomiting when he drank liquids. *Id.* He put in requests to Nurse Kelly. He had problems the entire seven days he was in administrative segregation. In fact, he testified his problems with liquids continued for about a month. *Id.* at 60. The only treatment he received was being placed on a liquid diet for seven days. *Id.*

## II. APPLICABLE STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings

-5-

and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.*, 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.  DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

### A.  The County Defendants' Motion

The County Defendants contend they are entitled to summary judgment on the following grounds: (1) Plaintiff was not deprived of Due Process; (2) there is no proof that the County Defendants failed to protect the Plaintiff; (3) the Defendants are entitled to qualified immunity; and, (4) there is no basis for official capacity liability.

-6-

### 1. Due Process

"We begin with the fundamental principle that a person held in confinement as a pretrial detainee may not be subjected to any form of punishment for the crime for which he is charged." *Rapier v. Harris*, 172 F.3d 999, 1002 (7th Cir. 1999); *see also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) ("Pretrial detainees are presumed innocent and may not be punished."). Under *Bell v. Wolfish*, 441 U.S. 520, 538 (1979), "restrictions on pretrial detainees that implicate a liberty interest protected under the Due Process Clause may not 'amount to punishment of the detainee.'" *Benjamin v. Fraser*, 264 F.3d 175, 188 (2nd Cir. 2001). "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell*, 441 U.S. at 537. In determining whether a particular restriction constitutes a permissible restriction or amounts to impermissible punishment, the court first asks "whether the restriction is based upon an express intent to inflict punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002). If "there is no indication of such an express intent," the court next considers "whether punitive intent can be inferred from the nature of the restriction." *Valdez*, 302 F.3d at 1045.

In this regard, the Supreme Court in *Bell* held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539. "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may

-7-

rationally be connected is assignable for it and the action does not appear excessive in relation

to the alternative purpose assigned." *Robles v. Prince George's County, Maryland*, 302 F.3d

262, 269 (4th Cir. 2002) (internal citations and punctuation omitted).

> A reasonable relationship between the governmental interest and the challenged
> restriction does not require an "exact fit," nor does it require showing a "least
> restrictive alternative." Otherwise, every administrative judgment would be
> subject to the possibility that some court somewhere would conclude that it had
> a less restrictive way of solving the problem at hand. Moreover, it does not
> matter whether we agree with the defendants or whether the policy in fact
> advances the jail's legitimate interests. The only question that we must answer
> is whether the defendants' judgment was rational, that is, whether the defendants
> might reasonably have thought that the policy would advance its interests.

*Valdez*, 302 F.3d at 1046.

In this case, Plaintiff was moved after he and Inmate Black were accused of stealing other

inmates' commissary items. Deputy Babione was told that there would be issues if Plaintiff

remained in the pod. Plaintiff testified that Corporal Caudle is the supervising officer over

Deputy Babione. *Defs' Ex.* 3 at 22. According to Plaintiff, Corporal Caudle called the

classification officer, Officer Joe Standrod, and the decision was made to re-classify him and

move him to administrative segregation. *Id.* Plaintiff felt Corporal Caudle should have

investigated the incident. *Id.* at 29. With respect to Sergeant Mitchell, Plaintiff testified he

allowed the Plaintiff to be moved to administrative segregation without any type of investigation.

*Id.* at 31.

There were clearly legitimate non-punitive reasons for separating inmates to ensure the

safety of all involved. *See, e.g., Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992) (detention

center has a legitimate interest in segregating individual inmates from general population for

non-punitive reasons, such as where there is a threat to the safety and security of the institution).

-8-

Plaintiff has presented no evidence of punitive intent on the part of the Defendants.  Detention center officials have discretion in classifying prisoners and determining where they should be housed within the facility.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  There is no genuine issue of material fact as to whether the decision to place Plaintiff in segregation was a disciplinary matter, or punishment for the crimes he was being charged with; but rather, it was an administrative decision designed to preserve order in the prison and protect the safety of all inmates.  The County Defendants are entitled to summary judgment on this claim.

### 2.  Failure to Protect

Plaintiff's failure to protect claim is based on his being moved into a cell block with three detainees who had allegedly threatened him in the past.  "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners."  *Holden v. Hirner*, 663 F.3d 336, 340-41 (8th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  To prevail on his failure to protect claim, Plaintiff must first prove he was "incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  "This is an objective requirement to ensure the deprivation is a violation of a constitutional right."  *Holden*, 663 F.3d at 341 (citation omitted).  Second, Plaintiff must "establish the prison officials were deliberately indifferent to inmate health or safety.  This is a subjective requirement, mandating the prisoner prove the official both knew of and disregarded an excessive risk to inmate health or safety." *Id*. (citation and internal quotation marks omitted); *see also Young v. Selk*, 508 F.3d 868, 870-73 (8th Cir. 2007) (discussing potential for substantial risk where inmate told officials of cellmate's threats, requested to be removed from cell immediately, said it was an emergency, and was subsequently attacked).  "An official is deliberately indifferent if he or she actually knows of a

-9-

substantial risk and fails to respond reasonably." *Whitson v. Stone County Jail,* 602 F.3d 920, 923 (8th Cir. 2010) (internal quotation marks and citations omitted).

Defendants maintain Plaintiff's claim fails because Plaintiff was not physically assaulted. This statement is, of course, overly broad. As the Supreme Court stated in *Farmer*, the prisoner need not "await a tragic event such as an actual assault before obtaining relief." *Farmer*, 511 U.S. at 845 (internal quotation marks and citation omitted).

Plaintiff:

> need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. Moreover, in order to have a viable deliberate indifference claim, a plaintiff is *not* required to allege and prove that the defendant. . . specifically knew about or anticipated the precise source of the harm.

*Nelson v. Shuffman*, 603 F.3d 439, 447 (8th Cir. 2010).

They also argue there is no record any request for protective custody or a threat/need to remove the Plaintiff at or around the March 8, 2016, time frame. Plaintiff testified Sergeant Mitchell was the individual who moved him out of the N-Pod so he was aware of the problems Plaintiff had in that pod previously. *Defts' Ex.* 3 at 38. According to Plaintiff, it was Sergeant Mitchell who authorized his move back to N-Pod. Once back in the pod, Plaintiff makes only the most general allegations that threats were made against him. Instead, Plaintiff relies primarily on threats allegedly made against him in the past. This falls far short of showing a genuine issue of material fact exists as to whether Defendants caused him to be incarcerated under conditions posing a substantial risk of serious harm. *Irving v. Dormire*, 519 F.3d 441, 447 (8th Cir. 2008). The County Defendants are entitled to summary judgment on this claim.

-10-

### **3.  Qualified Immunity**

Having found that the facts do not make out a constitutional violation, the County Defendants are entitled to qualified immunity.  *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### **4.  Official Capacity Liability**

Plaintiff has asserted official capacity claims against the County Defendants.  The County Defendants maintain there is no proof, or even any allegation of, any unconstitutional county policy or custom that was the moving force behind any alleged violation of Plaintiff's constitutional rights.  I agree.

Official capacity suits "generally represent only another way of pleading an action against an entity of which the officer is an agent."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  An official capacity suit requires proof that a custom or policy of the governmental entity was the moving force behind the constitutional violation.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

"There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences."  *Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009) (citation omitted); *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009) (Plaintiff must point to "any officially accepted guiding principle or procedure that was

-11-

constitutionally inadequate"). Plaintiff has made no such allegations. In fact, he testified the County Defendants went against the policies of the WCDC.

### B. Nurse Oliver's Motion

Nurse Oliver contends: (1) she was not deliberately indifferent to the Plaintiff's medical needs; (2) a single instance of inadvertently prescribing a medication to which a detainee is allergic does not violate the detainee's constitutional rights – particularly when the detainee does not take the medication; and, (3) she is entitled to qualified immunity.

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To prevail on an Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the [officers] actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

-12-

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

In this case, Plaintiff's primary claim is based on Nurse Oliver's writing him a prescription for amoxicillin, which is a medication he had a known allergy to. Nurse Oliver indicates she is an advanced practice nurse employed by Karas Correctional Health, P.L.L.C. *Oliver Ex.* J at ¶¶ 1-4. Nurse Oliver states Karas maintains a digital record keeping system where certain conditions, such as allergies, are flagged as alerts. *Oliver Ex.* J at ¶ 11. When flagged as an alert, it appears on every screen for that individual within the system. *Id.* at ¶ 12. Karas became the medical care provider for the WCDC in January, 2016. *Id.* at ¶ 14. All new detainee health information mandating an alert is entered into the system by Karas employees. *Id.* at ¶ 15.

Plaintiff was in the WCDC prior to Karas becoming the contract medical services provider. *Oliver Ex.* J at ¶ 16. On January 26, 2016, the digital record keeping system did not list amoxicillin as an alert for Plaintiff. *Id.* at ¶ 18. Nurse Oliver acknowledges that Plaintiff's medical records did contain references to his reported allergy to amoxicillin. *Id.* at ¶ 17. Because there was no alert, Nurse Oliver indicates she inadvertently prescribed Plaintiff amoxicillin instead of another antibiotic. *Id.* at ¶ 19. The Plaintiff refused the amoxicillin at med pass on January 26, 2016. *Id.* at ¶ 20. On January 27, 2016, the prescription was discontinued and his allergy was entered into the system as an alert. *Id.* at ¶ 21. A replacement antibiotic was prescribed. *Id.* at ¶ 23. Nurse

-13-

Oliver does not address Plaintiff's testimony that they discussed his allergy when she visited with him over the visitation screen.

Even assuming for purposes of this motion that Nurse Oliver was guilty of medical malpractice in prescribing Plaintiff amoxicillin, this does not mean the Eighth Amendment to the United States Constitution was violated. In *Popoalii*, the Eighth Circuit noted that "[m]edical malpractice alone, however, is not actionable under the Eighth Amendment." *Popoalii*, 512 F.3d at 499 (citation omitted). "Deliberate indifference is a very high standard." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Here, at most, the summary judgment record establishes that Nurse Oliver was negligent in failing to review Plaintiff's non-digitalized medical record and/or in failing to recall the allergy when she wrote the prescription. In fact, the Plaintiff himself testified Nurse Oliver may have simply made a mistake, albeit one that could have had grave consequences for him.

Plaintiff also makes generalized complaints of chest and lung pain as well as pain down his left arm over a period of several months. At the hearing, however, he testified that he was satisfied with the treatment he received from Nurse Oliver, with the exception of a two week period which involved his symptoms for which he was eventually prescribed the amoxicillin. In fact, he even asked for her since she was familiar with his medical history.

With respect to the use of a video communication or consultation, the summary judgment records indicate Plaintiff was examined on multiple occasions by Nurse Oliver or other medical care providers. Nurse Oliver is entitled to summary judgment on this claim.

Having found that the facts do not make out a constitutional violation, Nurse Oliver is also entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir.

-14-

2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### IV.  CONCLUSION

For the reasons stated, I recommend that the Washington County Defendants' motion for summary judgment (Doc. 50) and Nurse Oliver's motion for summary judgment (Doc. 53) be **GRANTED** and the **CASE DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of July, 2017.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

-15-

AO72A
(Rev. 8/82)